**In re Charles Leroy HUMBERT and Lynda Mae Humbert, Debtors.**

**Bankruptcy No. 80–01558.**

United States Bankruptcy Court,
N. D. Ohio, W. D.

May 28, 1982.

---

Thomas A. Yoder, Toledo, Ohio, for debtors.

John J. Hunter, Toledo, Ohio, trustee.

### ORDER

RICHARD L. SPEER, Bankruptcy Judge.

This cause came before the Court upon the Application for Interim Compensation of Attorney for the Trustee (hereafter Trustee's Attorney) pursuant to 11 U.S.C. § 331.

A hearing was held with testimony taken and arguments heard upon the application for the sum of Thirty Seven Thousand Two Hundred Sixty-Eight and 33/100 Dollars ($37,268.33) as compensation related to settlement of the fire insurance claims of the Debtors and procurement of the insurance proceeds. Opposition was made by the Debtors to this amount.

### FACTS

The Court, having thoroughly considered all the evidence relating to this Application, finds as follows:

1. Debtors, Charles and Linda Humbert, filed in this Court their joint Chapter 7 Petition in Bankruptcy on September 24, 1980. John J. Hunter, Applicant herein, was appointed as Interim Trustee at that time, and was appointed as Trustee on October 10, 1980.

2. The Trustee made application to the Court on November 17, 1980 to serve as his own attorney upon the grounds that there existed a dispute of the Debtors' insurance claims as well as possible preference payments, both of which required legal assistance. Said application was granted by this Court on November 18, 1980.

3. Listed in the Debtors' schedule of assets was a contingent recovery of insurance proceeds in an unknown amount. This re-

covery was based upon the loss by fire of the Debtors' residence and its contents prior to the filing of their petition.

4. The Trustee's Attorney filed a Complaint for Recovery against the Debtors and the Mid-American Fire and Casualty Company on September 23, 1981. Pretrial was held October 29, 1981 where the parties advised the Court of probable settlement. An Amended Complaint for further recovery was filed by the Trustee's Attorney in January of 1982. Because of settlement, the Trustee's Attorney dismissed his Complaint on February 17, 1982.

5. The Trustee's Attorney collected from the Mid-American Fire and Casualty Company the maximum recoverable benefits under the insurance contract of the Debtors in the approximate amount of One Hundred Eleven Thousand Eight Hundred Five and no/100 Dollars ($111,805.00). This amount is sufficient to pay all the Debtors' creditors in full with a substantial balance remaining to be returned to the Debtors.

6. The Trustee's Attorney contends that pursuant to 11 U.S.C. § 330, the Court may, in its discretion, award a contingent fee based upon the recovered amount benefitting the estate.

7. The Debtors argue that because the attorney for the Trustee did not disclose the fact that he was working for a contingent fee, he should only be granted a reasonable hourly rate for the work done.

### LAW

As the Trustee's Attorney stated in his Memorandum, the Bankruptcy Code has liberalized its approach towards attorney fees. This liberalization is explained in the legislative history of the Code in the following manner:

"The effect of the provision is to overrule *In re Beverly Crest Convalescent Hospital, Inc.*, 548 F.2d 817 (9th Cir. 1976, as amended 1977), which set an arbitrary limit on fees payable, based on the amount of a district judge's salary, and other, similar cases that require fees to be determined based on notions of conserva-

tion of the estate and economy of administration. If that case were allowed to stand, attorneys that could earn much higher incomes in other fields would leave the bankruptcy arena. Bankruptcy specialists, who enable the system to operate smoothly, efficiently, and expeditiously, would be driven elsewhere, and the bankruptcy field would be occupied by those who could not find other work and those who practice bankruptcy law only occasionally almost as a public service. Bankruptcy fees that are lower than fees in other areas of the legal profession may operate properly when the attorneys appearing in bankruptcy cases do so intermittently, because a low fee in a small segment of a practice can be absorbed by other work. Bankruptcy specialists, however, if required to accept fees in all of their cases that are consistently lower than fees they could receive elsewhere, will not remain in the bankruptcy field...." H.Rep.No.95-595, p. 330.

Therefore Section 330 provides for reasonable compensation for actual services rendered based upon the time, the nature, the extent, and the value of the services rendered with regard to comparable services and compensation in a non-bankruptcy case.

The relevant sections of the Bankruptcy Code and Rules used in arriving at a reasonable figure of compensation are 11 U.S.C. 327, 328, 330, and 331, and Bankruptcy Rule 219, which are reproduced here in pertinent part:

*11 U.S.C. § 327 Employment of Professional Persons*

(a) "Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title...."

(d) "The court may authorize the trustee to act as attorney or accountant for the estate if such authorization is in the best interest of the estate...."

*11 U.S.C. § 328 Limitation on Compensation of Professional Persons*

(a) "The trustee, or a committee appointed under section 1102 of this title, with the court's approval, may employ or authorize the employment of a professional person under section 327 or 1103 of this title, as the case may be, on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, or on a contingent fee basis. Notwithstanding such terms and conditions, the court may allow compensation different from the compensation provided under such terms and conditions after the conclusion of such employment, if such terms and conditions prove to have been improvident in light of developments unanticipatable at the time of the fixing of such terms and conditions."

(b) "If the court has authorized a trustee to serve as an attorney or accountant for the estate under section 327(d) of this title, the court may allow compensation for the trustee's services as such attorney or accountant only to the extent that the trustee performed services as attorney or accountant for the estate and not for performance of any of the trustee's duties that are generally performed by a trustee without the assistance of an attorney or accountant for the estate...."

*11 U.S.C. § 330 Compensation of Officers*

(a) "After notice to any parties in interest and to the United States trustee and a hearing, and subject to sections 326, 328, and 329 of this title, the court may award to a trustee, to an examiner, to a professional person employed under section 327 or 1103 of this title, or to the debtor's attorney—

(1) reasonable compensation for actual, necessary services rendered by such trustee, examiner, professional person, or attorney as the case may be, and by any paraprofessional persons employed by such trustee, professional

person, or attorney, as the case may be, based on the time, the nature, the extent, and the value of such services and the cost of comparable services other than in a case under this title; and

(2) reimbursement for actual, necessary expenses...."

*11 U.S.C. § 331 Interim Compensation*

"A trustee, an examiner, a debtor's attorney, or any professional person employed under section 327 or 1103 of this title may apply to the court not more than once every 120 days after an order for relief in a case under this title, or more often if the court permits, for such compensation for services rendered before the date of such an application or reimbursement for expenses incurred before such date as is provided under section 330 of this title...."

*Bankruptcy Rule 219 Compensation for Services Rendered and Reimbursement of Expenses Incurred In A Bankruptcy Case*

(a) "*Application for Compensation or Reimbursement.* A person seeking compensation for services, or reimbursement of necessary expenses, from the estate shall file with the court an application setting forth a detailed statement of (1) the services rendered and expenses incurred, (2) the amounts requested. An application for compensation shall include a statement by the applicant as to what payments have theretofore been made or promised to him for services rendered or to be rendered in any capacity whatsoever in connection with the case, the source of the compensation so paid or promised, whether any compensation he has previously received has been shared and whether an agreement or understanding exists between the applicant and an other person for the sharing of compensation received or to be received for services rendered in or in connection with the case, and the particulars of any such sharing of compensation or agreement or understanding therefor, except that the details of any agreement by the applicant for the sharing of his compensation as a member or regular associate of a firm of lawyers or accountants shall not be required...."

(c) "*Factors in Allowing Compensation.*

(1) "*General.* The compensation allowable by the court to a trustee, receiver, marshal, attorney, accountant, or other person entitled to compensation for services rendered in the administration of a bankruptcy estate shall be reasonable, and in making allowances the court shall give due consideration to the nature, extent, and value of the services rendered as well as to the conservation of the estate and the interests of creditors.

(2) "*Trustee, Receiver, or Marshal.* The compensation allowed by the Act to a trustee, receiver, or marshal shall be in full compensation for the services performed by him as required by the Act and by these rules, but shall not be deemed to cover expenses necessarily incurred in the performance of his duties and allowed upon the settlement of his accounts. Additional compensation may be allowed for legal or other services not required of him by the Act or by these rules, but only if such services were authorized by order of the court before they were rendered...."

Twelve factors to be used in conjunction with these Code sections in determining a reasonable compensation figure were set forth by the Court of Appeals for the Fifth Circuit in the case of *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 719 (5th Cir. 1974). These factors were held to be applicable in bankruptcy cases. *In re First Colonial Corp. of America,* 544 F.2d 1291 (5th Cir. 1977), cert. den. 431 U.S. 904, 97 S.Ct. 1696, 52 L.Ed.2d 388 (1977); *Cle-Ware Industries, Inc. v. Sokolsky,* 493 F.2d 863 (6th Cir. 1974); *In re Strickel,* Adv. No. 581–0003 (N.D.Tex.1981); *In re International Horizons,* 10 B.R. 895 (Bkrtcy.N.D. Ga.1981); *In re James Calvin Belk Construction Co., Inc.,* 11 B.R. 56 (Bkrtcy.N.D. Miss.1981). *In re City Planners and Developers, Inc.,* 5 B.R. 217 (Bkrtcy.D.Puerto Rico 1980); *In re Inter-Systems Industries, Inc.,* 5 B.C.D. 1325 (W.D.Washington 1979).

■ Not only must the Court discuss these *Johnson* factors, but it must also ex-

plain how the Court's interpretation of these factors led to its conclusion. Each case must be decided upon its own merits. *In the Matter of U. S. Golf Corp.*, 639 F.2d 1197 (5th Cir. 1981); *In re D. H. Overmyer Co., Inc.*, 3 B.R. 678 (Bkrtcy.S.D.N.Y.1980). Every factor is not necessarily applicable to each case, but they must be considered.

Before delving into these factors a clarification must be made. In reviewing and applying the pre-Bankruptcy Code cases, the Court must distinguish and delete two factors which are no longer relevant to the task of determining fees in a Bankruptcy context. The legislative history of § 330 emphasizes that the factors no longer to be considered are the conservation of the estate and economy of administration (H.Rep. No.95–595, p. 330, U.S.Code Cong. & Admin.News 1978, pp. 5787, 6286). Therefore, to the extent that the cases discuss these two factors those discussions shall not be relevant here.

The factors will be set forth individually and discussed as to how each has been weighed in reaching a decision on the amount of the fee to be awarded.

1.) *The nature of services rendered.* The services rendered are adequately stated in the Application for Interim Compensation and were not controverted by the Debtors. The services referred to were those solely in connection with the insurance claims relating to the destruction of the Debtors' residence and property by fire, and the subsequent securing of payment from the insurance carrier to the Trustee for the benefit of the estate. Specifically, the services rendered included the "compellation [sic] of personal property loss, conferences relative to alleged incendiary accelerants, conferences with the fire department, conferences with the Humberts, numerous conferences with the adjuster, conferences with the adjusters supervisor, conferences with the attorney for the insurance company, protracted negotiations regarding amount of loss, research of law regarding the right of the trustee to obtain payment of funds pursuant to an insurance policy, institution of

certain adversary proceedings in the Bankruptcy Court relative to obtaining payment of funds, research on law as to burden of proof as to arson." (See Application for Interim Compensation of Attorney for the Trustee, filed January 18, 1982)

2.) *The difficulties and complexities encountered.* It has been clear from the commencement of this case that the Trustee's Attorney has had difficulties in resolving the matter of the fire insurance. He has had many obstacles to overcome including his attempts to negotiate a settlement with the insurance adjusters which the adjusters repeatedly frustrated. Further, the assistance that could have been rendered by the Debtors was not so rendered, thereby making his job more difficult.

3.) *The amount of time necessarily expended.* Although the Trustee's Attorney did not make a detailed statement of the hours expended as required by the Bankruptcy Code, Rules, and case law, he testified that approximately thirty-six (36) hours were accumulated in resolving the insurance dispute. This hourly figure not having been controverted by the Debtors, will be accepted as a close approximation of time spent. However, this Court will require such documentation in the future.

■ Although there is not sufficient detail and documentation in this regard, such lack of documentation does not relieve the Court of its duty to determine the professional nature of the services rendered. The Court must make such determination with the information available. *In re McAuley Textile Corp.*, 11 B.R. 646 (Bkrtcy.D.Maine 1981); *In re Leader International Industries, Inc.*, 2 B.C.D. 588 (E.D.Mich.1976); *In re Hamilton Distributors, Inc.*, 440 F.2d 1178 (7th Cir. 1971).

4.) *The results achieved.* The results achieved were excellent. The Trustee's Attorney obtained the maximum recovery allowed in the following approximated amounts.

**494**

$ 72,100 for destruction of primary residence
$ 36,100 for destruction of unscheduled personal
property
$ 3,605 for site debris removal
$111,805 total approximated amount recovered [1]

5.) *The size of the estate and the burden it can safely bear.* For all practical purposes, the estate monies consist entirely of that amount recovered by the Trustee's attorney from the insurance company. These proceeds are sufficient to pay 100% to the unsecured creditors with a remaining sizeable balance to be paid to the Debtors.

6.) *The duplication of services.* Services were rendered by the Trustee's Attorney with a small amount of help by Attorney Richard Szczepaniak. However, no duplication was inferred by the Debtors or evidenced to this Court.

7.) *The undesireability of the case.* As Trustee and Trustee's Attorney, Mr. Hunter can not pick and choose which cases he wants from those he does not want; the cases are randomly assigned to the Trustees by the Bankruptcy Clerk's Office. With each case, the Trustee and his attorney inherit all related problems. In this particular case, the insurance company questioned whether to pay any money at all to the Trustee because they suspected arson. Trustee's Attorney needed to meet and deal with this potential issue in his attempt to collect the insurance proceeds. He repeatedly attempted to negotiate with the insurance company, but was frustrated in his attempts to locate an authorized individual with whom he could obtain a settlement of the issue. Further, he needed to confer with the fire department officials to further his investigation for preparation of a defense to a possible arson charge by the insurance company.

From the onset, this case has been difficult. The Trustee and Trustee's Attorney have had to fight for every success obtained; all negotiations were adversarial in nature. It is therefore understandable that this case has not been desireable.

8.) *Whether the fee was fixed or contingent.* Testimony was taken at the hearing by Attorney Michael F. Jilek whose practice frequently consists of cases dealing with fire loss and insurance recovery. He testified that the general legal community standard in setting fees for this type of case is that of a one-third contingent fee in addition to any expenses incurred. He also stated that a common and necessary occurrence is to inform and discuss such contingent fee arrangement with the client, with the arrangement usually reduced to writing. Mr. Jilek could not however estimate what the current community hourly rate would be for those not requiring a percentage fee contingent upon the recovered amount.

Mr. Hunter testified that his own hourly rate was $90.00 to $100.00 per hour on any Bankruptcy-related work. Mr. Hunter did not provide evidence to the Court of a contingent fee contract.

Section 328 of the Bankruptcy Code limits compensation for professional persons. The first sentence in part (a) indicates that the trustee may employ a professional person on a contingent fee basis upon approval of the Court. The second sentence however, appears to indicate that the Court may allow different compensation after the conclusion of such employment if conditions warrant it.

Mr. Hunter testified that as Trustee's Attorney, he compiled approximately thirty-six hours of work. Although the results of his work were excellent, this Court does not believe the amount of work required to achieve these results necessitates granting a contingent fee under the second sentence of § 328(a).

9.) *The skill requisite to perform the legal services properly; the experience, reputation, and ability of the attorney.* Notwithstanding the Court's finding in (8) above, the Court is convinced that Mr. Hunter, as Trustee and Trustee's Attorney was able to effectuate the recovery of the insurance proceeds because of his years of valuable experience as Trustee for this Court as well as his perseverence. The

---

1. The figures used are taken from the Application for Interim Compensation. The amounts deposited show $72,200, $36,100, and $3,605 respectively for a total of $111,905.

Court is further convinced that although the insurance company made a payment shortly after the fire, as Debtors' attorney stated, it appears that this payment was solely for emergency assistance. The actual payment on the insurance contracts did not commence until over a year after the Debtors filed for bankruptcy. A great deal of power attaches to someone holding the title of Trustee and Trustee's Attorney, and Mr. Hunter was able to wield that power for a successful result.

The Court is not persuaded by the Debtors' Memorandum which argues that this money would have been recovered regardless of the actions of the Trustee's Attorney. Furthermore, it does not appear that the Debtors' prior attorney could have done more in the recovery of these funds from the insurance company. But for the Trustee's Attorney's persistence and experience in dealing with these matters, as well as his position as attorney for a Trustee in Bankruptcy, full recovery may not have been possible.

Although a one-third contingent fee will not be awarded, this Court believes and so finds that the Trustee's attorney must be awarded a premium over and above a $100.00 hourly rate. It is therefore

ORDERED, ADJUDGED and DECREED that Trustee's Attorney be awarded the sum of Seven Thousand Five Hundred and no/100 Dollars ($7,500.00) as reasonable compensation for his services.

In so reaching these conclusions, the Court has considered all the evidence presented whether or not referred to specifically in the opinion above.