In re Andrew BENASSI, a/k/a Andrew R. Benassi, Dr. Andrew Benassi, Dr. Andrew R. Benassi, Andrew Benassi, D.D.S. and Andrew R. Benassi, D.D.S., d/b/a Andrew R. Benassi, D.D.S., Debtor.

Steven J. SEILER and John N. Nys of Johnson, Killen, Thibodeau & Seiler, P.A., Appellants,

v.

FIRST NATIONAL BANK OF BABBITT and Midway National Bank, Appellees.

Civ. No. 5–86–193.
Bankruptcy No. 5–83–35.

United States District Court, D. Minnesota, Third Division.

Feb. 27, 1987.

Steven J. Seiler, Duluth, Minn., for appellant.

John A. Hedback, Minneapolis, Minn., for U.S. trustee.

## ORDER

RENNER, District Judge.

Attorneys Steven J. Seiler and John N. Nys appeal the order of the bankruptcy court dated July 9, 1986 allowing total compensation of $75,000.00 to Seiler and Nys' law firm for its representation of debtor in condemnation proceedings. Seiler and Nys seek an award of $98,666.67.

### I.

Andrew Benassi ("debtor") holds an interest in real estate located in Lake Elmo on the main highway between St. Paul and Stillwater, Minnesota. A commercial restaurant building on the property is set back a considerable distance from the roadway. The State of Minnesota sought to condemn an undeveloped portion of the property adjacent to the highway as part of an expansion project and offered $184,000 for the strip of land. Benassi felt the offer was grossly inadequate since the highway construction would permanently alter access to the restaurant building and require that portions of the parking facility and drainfield be relocated.

On February 16, 1983, Benassi filed a voluntary petition under Chapter 11 of the Bankruptcy Code. Two days later the bankruptcy court approved the appointment of Seiler and Nys under a general retainer as debtor's counsel. Formal condemnation proceedings began in March.

By order dated May 5, 1983, the bankruptcy court approved retention of Seiler and Nys on a contingency fee basis to represent debtor in the condemnation action. The fee arrangement was made subject to several conditions. The fee paid to their firm was limited to one-third of any recovery exceeding the $184,000 offer previously made to debtor. Of greatest significance to the issues raised in this appeal was the provision that Seiler and Nys report to the bankruptcy court:

the work performed and the results obtained so that the Court may determine that the contingent fee arrangement approved herein was not improvident in the light of developments arising after this Order as well as to determine the reasonableness of the out-of-pocket expenses for which payment is required.

*In re Andrew Benassi*, Bkcy. No. 5–83–35 (Bankr.D.Minn. May 5, 1983) (order approving appointment of attorney). By·its choice

of terms, the bankruptcy court makes reference to the statutory provision authorizing the employment of an attorney on a contingent fee basis:

> The trustee, or a committee appointed under section 1102 of this title, with the court's approval, may employ or authorize the employment of a professional person under section 327 or 1103 of this title, as the case may be, on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, or on a contingent fee basis. *Notwithstanding such terms and conditions, the court may allow compensation different from the compensation provided under such terms and conditions after the conclusion of such employment, if such terms and conditions prove to have been improvident in light of developments unanticipatable at the time of the fixing of such terms and conditions.*

11 U.S.C. § 328(a) (1982) (emphasis added).[1]

The condemnation action proceeded under the Minnesota "quick take" law, Minn. Stat. § 117.042 (1986), whereby the state paid its appraisal of the property value to debtor's estate. A hearing was then held by court appointed commissioners, who entered an award in favor of debtor in the aggregate amount of $393,645.00. Pursuant to Minnesota statute, three-fourths of this award, minus the payment of $184,000.00, was distributed to the estate, with $37,077.92 paid to Seiler and Nys as attorneys' fees. The commissioners' award was appealed by debtor. On November 27, 1985, prior to trial in the state district court, the parties to the condemnation action entered into a stipulation for settlement in the total amount of $480,000.00, requiring a final payment to the estate of $184,766.25.

Seiler and Nys filed an application seeking one-third of this additional payment, or $61,588.75, as an award for attorneys' fees. In arriving at a decision on the application, the bankruptcy court found that from 1982 through 1986 local counsel had expended a total of 77.6 logged hours and had shown the possibility of another eight to twenty unrecorded hours. In addition, counsel associated with Seiler and Nys logged a total of 284.7 hours representing debtor. Local counsel's billing rate during the period was $95.00; the billing rate for associate counsel was not determined. The attorneys also expended $1,365.10 in excess of costs and expenses formerly reimbursed. After employing the twelve factor test set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir.1974), and *In re First Colonial Corp. of America*, 544 F.2d 1291 (5th Cir.1977), the bankruptcy court held that the previously approved contingent agreement was "improvident in light of subsequent developments in the condemnation case herein, primarily the amount of time expended and the fact that the proceedings were settled prior to trial." *In re Andrew Benassi*, Bkcy. No. 5–83–35, slip op. at 5–6 (Bankr.D.Minn. July 9, 1986). The court concluded that the reasonable value of counsel's services was $75,000.00, or a final payment in the amount of $37,922.08, which included reimbursement for costs and expenses. Seiler and Nys appeal from this order.

The bankruptcy court is allowed wide discretion in fixing an attorney's compensation. *In re U.S. Gulf Corp.*, 639 F.2d 1197, 1201 (5th Cir.1981). A fee award will be reversed only if the bankruptcy court fails to apply the proper legal standard and procedure, or the award was based on clearly erroneous findings of fact. *In re McCombs*, 33 B.R. 387, 388 (E.D.Mo.1983), *aff'd* 751 F.2d 286 (8th Cir.1984). *See Boston and Maine Corp. v. Sheehan, Phinney, Bass & Green*, 778 F.2d 890, 894 (1st Cir.1985).

## II.

Under former Bankruptcy Rule 219(c)(1), a professional person who rendered services to the bankrupt estate was entitled to reasonable compensation. Contracts for

---

1. The statute now in effect reads "not capable of being anticipated" rather than "unanticipatable." 11.U.S.C. § 328(a) (Supp.II 1984) (effective with respect to cases filed 90 days after July 10, 1984).

employment on a percentage fee basis between a trustee in bankruptcy and an attorney were often invalidated. *Watkins v. Sedberry*, 261 U.S. 571, 575, 43 S.Ct. 411, 412, 67 L.Ed. 802 (1923). The relevant inquiry was not whether the contingent fee contract was *per se* invalid, but whether the compensation provided by the agreement was reasonable under Rule 219. *Carter v. Woods*, 433 F.Supp. 291, 293 (W.D.Mo.1977).

The guiding principles under the old rule were conservation of the estate and economy of administration. *In re Penn-Dixie Industries*, 18 B.R. 834, 838 (S.D.N.Y. 1982). In effect, attorneys' fees were only allowed on a quantum meruit basis. These principles, however, discouraged practitioners from entering the bankruptcy field, where they would have earned substantially less than in other areas of practice. Estates were ill-served by less able bankruptcy specialists and the costs of inefficient management were passed on to creditors. H.R.Rep. No. 595, 95th Cong., 1st Sess. 330 (1977), *reprinted in* 1978 U.S. Code Cong. & Admin.News 5963, 6286. As a consequence, Congress abandoned these standards in enacting the Bankruptcy Code and courts "are no longer bound by pre-Code notions of frugality and economy in fixing fees." *In re McCombs*, 751 F.2d at 288. Contingent fees are now explicitly sanctioned by 11 U.S.C. § 328(a) (1982).

In general, a debtor in possession performs the functions and duties of a trustee. 11 U.S.C. § 1107(a) (Supp.II 1984). Section 327(a) of the Bankruptcy Code provides that a trustee may hire, with court approval, an attorney without fixing the terms or conditions of employment. 11 U.S.C. § 327(a) (1982). A reasonable fee for services rendered to the bankrupt estate would be subsequently determined by the bankruptcy court under § 330 of the Code. In sharp contrast with the old Bankruptcy Act, § 328(a) now authorizes the court to preapprove a wide variety of employment arrangements between the attorney and trustee, including a contingent fee contract. Unlike § 327(a), this provision anticipates that the terms of the fee arrangement will be established prior to the rendition of professional services. *In re Warrior Drilling & Engineering Co.*, 18 B.R. 684, 693 (N.D. Ala.1981). As a safety valve in the event of unpredictable changes, the statute permits the court to award fees at variance with the terms of its previous order when they "prove to have been improvident in light of developments unanticipatable" at the time the compensation agreement was approved. 11 U.S.C. § 328(a) (1982).

All disbursements to attorneys for fees and costs must ultimately be approved by a bankruptcy judge. Section 330(a) of the Code states in part:

> After notice and a hearing, *and subject to sections 326, 328, and 329* of this title, the court may award to ... the debtor's attorney—
>
> (1) reasonable compensation for actual, necessary services rendered by such ... attorney, ... based on the nature, the extent, and the value of such services, the time spent on such services and the cost of comparable services other than in a case under this title....

11 U.S.C. § 330(a)(1) (Supp.II 1984) (emphasis added). This section sets forth the Code's reformed standard of reasonableness for compensation of attorneys where, as in the usual case, no measure for compensation was predetermined. However, § 330(a)(1) does not supplant § 328(a) and give the judge free reign to void a previously authorized employment agreement for a percentage fee. By its own terms, § 330(a) is "subject to" § 328, the controlling provision in this appeal, which prescribes that compensation contracts may be overturned where there is a finding its terms and conditions were improvident in light of developments unanticipated at the inception.

### III.

The cases relied upon by the bankruptcy court to undo the contingent fee agreement are inapposite to the circumstances at hand. The contingent fee contract at issue in *In re Yermakov*, 718 F.2d 1465 (9th Cir.1983), was executed more

than a year before the bankruptcy petition was filed and was never preapproved by the bankruptcy court. The fee award was calculated under the general provisions of § 330; sections 327 and 328 were not implicated. A similar situation was presented in *In re Consolidated Bancshares, Inc.*, 49 B.R. 467 (Bankr.N.D.Tex.1985), where the contingent fee arrangement had only been agreed to by the parties. *Id.* at 473. The case of *In re Humbert*, 39 B.R. 643 (N.D. Ohio 1984), *aff'g* 21 B.R. 489 (Bankr.N.D. Ohio 1982), is also of dubious precedential value. The trustee's application to the bankruptcy court under § 327(d) to serve as attorney for the debtors in their efforts to recover insurance proceeds was previously approved by the court. After successfully pursuing the claim, the trustee sought a percentage fee award, alleging he had entered into an oral contingent fee contract with debtors. 21 B.R. at 494. No evidence was supplied to the bankruptcy court substantiating this allegation; clearly, the court had never authorized such a contract under § 328(a). Yet, after conducting a reasonable fee analysis pursuant to § 330(a)(1) and reducing the fee request, the bankruptcy court concluded it was empowered by § 328(a) to alter the terms of a contingent fee contract, if a contract indeed existed. The district court affirmed on this basis. 39 B.R. at 645. It is certainly not clear that reference to § 328(a) was proper and, in any event, this Court is not obligated to follow what it perceives to be dicta.

Other opinions presuming to interpret § 328(a) can not legitimately support their decisions based on that section, either because no employment agreement existed or its terms and conditions were not earlier ratified by a bankruptcy judge. *See In re B.J. Gaff, Inc.*, 37 B.R. 548 (Bankr.D.Minn. 1984) (no prior agreement or court approval; additional fees denied where debtor's counsel was retained for two months, did little more than file the petition and attend the first creditors' meeting, and had already received fees in the sum of $10,000). *See also In re Vaniman International, Inc.*, 24 B.R. 207 (E.D.N.Y.1982) (previous bankruptcy order denied flat six percent brokerage commission and required trustee

to apply to court for the commission once the sale of property was completed); *In re Liberal Market, Inc.*, 24 B.R. 653 (Bankr.S. D.Ohio 1982) (fee application was filed by professional persons appointed under § 327; fee award determined by § 330).

In its review this Court has discovered two cases in which the terms and conditions of a professional's employment were not enforced, despite advance approval, on a finding that the terms were improvident in light of circumstances not capable of anticipation. In *In re Airlift International, Inc.*, 24 B.R. 128 (Bankr.S.D.Fla.1982), the bankruptcy court reduced the renumeration due a consulting firm under a previous order based on the finding that the firm's work product contained errors and remained incomplete when the firm discontinued its services to the trustee. The application for fees by attorneys appointed by the bankruptcy court under a general retainer was challenged in *In re Warrior Drilling & Engineering Co.*, 9 B.R. 841 (Bankr.N.D.Ala.1981). The debtor's attorneys had been instrumental in a successful and complex reorganization whereby the ailing company paid all secured and unsecured creditors and provided stockholders with a substantial return. The Court awarded compensation in excess of the attorneys' customary hourly rates. This conclusion resulted from its finding that "the parties did not and could not have foreseen ... the time, the pressures, or the complexity of this case or the phenomenal results achieved." *Id.* at 847. Any previous agreement providing for maximum compensation would therefore have proven "improvident." *Id.*

## IV.

 In the present case, there is no finding of fact by the bankruptcy judge that appellants' representation of debtor in the condemnation action was inadequate, that the dispute with the state was resolved at an unexpectedly early moment of the proceedings, that the results obtained were disappointing, or that the property escalated in value due to forces outside counsel's control. According to the bank-

ruptcy court, the two subsequent developments which rendered the percentage fee arrangement improvident were the settlement prior to trial and the reasonable fee analysis undertaken pursuant to § 330. As to the former grounds for voiding the compensation arrangement, this Court notes that the large majority of lawsuits, including condemnation actions, are settled before going to trial. This factor is not proper justification to overturn the fee arrangement where settlement is reached more than two years after attorneys are retained and litigation has progressed in several forums. As to the second grounds, this Court is of the firm conviction that a § 330 inquiry employing the dozen *Johnson* criteria, without more, circumvents the legal standard contained in § 328(a) and was thus an abuse of discretion.

 Attorneys are customarily engaged and compensated on a contingent fee basis in eminent domain litigation. *E.g., In re Knudsen Bros. Dairy, Inc.*, 24 B.R. 418, 420 (Bankr.D.Conn.1982). The bankruptcy court acknowledged this reality by permitting the debtor in possession to hire Seiler and Nys on these terms. Percentage fee arrangements are expressly condoned by § 328(a) and comport with the Bankruptcy Code's goal of attracting highly qualified professionals to the bankruptcy arena. Attorneys accept the risk in entering such arrangements that their efforts will not be rewarded. Contingent fees enable debtors, with their limited means, to avoid legal fees altogether. Successful representation by the lawyer inures not only to his own benefit, but also increases the assets of the estate and improves the potential recovery of creditors. *See Boston and Maine Corp.*, 778 F.2d at 895.

Where unforeseeable and unexpected circumstances intervene, § 328(a) permits the bankruptcy court to rewrite the employment agreement. Here, however, no subsequent occurrence can be discerned which rendered the terms of employment originally authorized improvident in light of developments unanticipatable at the time the contingent fee was approved. "To deny the fee now because it exceeds time

charges and looks high *in hindsight* would penalize [counsel] for a job well done and would tell [counsel] and all other attorneys that they should think twice before again working for" persons or businesses in bankruptcy proceedings. *Id.* at 898–99 (emphasis in original).

V.

Based on the foregoing, IT IS HEREBY ORDERED that the order of the bankruptcy court is reversed and remanded for proceedings consistent with this opinion.